# FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

Jonathan D. Williams

*Plaintiff,*

*vs.*

**Ann Klein Forensic Center**
Dr. Glenn Ferguson, PhD
Dr. Moisey, Psychiatrist
Dr. Douglas Smith, Psychiatrist
Dr. Paul, Psychologist
Dr. Strathern, Psychologist
**Mercer County Prosecutor's Office**
Timothy Ward, Esq.
Angelo J. Onofri, Esq.

*Defendant(s) et al.*

Civil Action No. _____

(To be supplied by the Clerk of the Court)

## COMPLAINT

RECEIVED

MAY 23 2018

AT 8:30_____
WILLIAM T. WALSH
CLERK

---

## INSTRUCTIONS; READ CAREFULLY

1.  This complaint must be legibly hand written or typed, signed by the plaintiff and subscribed to under penalty of perjury as being true and correct. All questions must be answered concisely in the proper space on the form. Where more space is needed to answerer any question, attach a separate sheet.

2.  In accordance with Rule 8 of the Federal Rules of Civil Procedure the complaint should contain (1) a short and plain statement of the grounds upon which the courts jurisdiction's depends, (2) a short plain statement of the claim showing that you are entitled to relief, and (3) a demand for judgment for the relief which you seek.

3.  You must provide the full name of each defendant or defendants and where they can be found.

4.  You must send the original and one copy of the complaint to the Clerk of the District Court. You must also send one additional copy of the complaint for each defendant to the Clerk. Do not send the complaint directly to the defendant.

5.  Upon receipt of the fee of $400.00 (a filing fee of $300.00 and an administrative fee of $50.00), your complaint will be filed. You will be responsible for service of a separate summons and copy of the complaint on each defendant. See Rule 4, Federal Rule of Civil Procedure.

**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

If you cannot prepay the $400.00 fee, you may request permission to proceed in forma pauperis in accordance with the procedures set forth in the application to proceed in forma pauperis. See 28 U.S.C. 1915. If there is more than one Plaintiff, each plaintiff must separately request the permission to proceed in forma pauperis.)

If you are given permission to proceed in forma pauperis, the $50.00 Administrative Fee will not be assessed. The Clerk will prepare and issue a copy of the summons for each defendant. The copies of the summonses and the copies of the complaint which you have submitted will be forwarded by the Clerk to the United States Marshal, who is responsible for service. The Marshal has USM-285 forms you must complete them in full and return the forms to the Marshal.

## QUESTIONS TO BE ANSWERED

Jurisdiction is asserted pursuant to (CHECK ONE)
___ 42 U.S.C. 1983 (applies to state prisoners)

___ Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and U.S.C. 1331 (applies to federal prisoners)

If you want to assert jurisdiction under different statutes, list these below:

_____

Indicate whether you are a prisoner or other confined person as follows:

✔ Pretrial detainee

___ Civilly – committed detainee

___ Immigration detainee

___ Convicted and sentenced state prisoner

___ Convicted and sentenced federal prisoner

___ Other (please explain) _____

FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY


Previous Dismissed Federal Civil Actions or Appeals: **NONE**

Parties to previous lawsuit:

Plaintiff(s): **NONE.**

Defendant (s):  **Not Applicable**.

Court and docket number: **NONE**

Grounds for dismissal: **Not Applicable.**


Approximate date of filing lawsuit: **Not Applicable**

Approximate date of disposition: **Not Applicable**

If there is more than one civil action or appeal, describe additional civil actions or appeals using this same format on separate sheets: **NONE**

Place of present Confinement? *Mercer County Correctional Center*

# Parties


_____

*(In item (a) below, place your name in the first blank and place your present address in the second blank. Do the same for additional Plaintiffs, if any.)*

(a) Name of Plaintiff:  **Jonathan Donnell Williams**
   Address: **1750 River Road, Lambertville, NJ 08650**
   Inmate #: **549041**


Page **3** of **7**

**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

(b)    **First Defendant:**

      Name:  **Please Refer to Attachment**
      Official position: **Please Refer to Attachment**
      Place of employment: **Please Refer to Attachment**
      How is this person involved in the case? **Please Refer to Complaint**

(c)    **Second Defendant:**

      Name:
      Official position:
      Place of employment:
      How is this person involved in the case?

(d)    **Third Defendant:**

      Name:
      Official position:
      Place of employment:
      How is this person involved in the case?

**Party Listing Is Continued On Attachment Page**

**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

5.      I previously have sought informal or formal relief from the appropriate administrative officials regarding the acts complained of in the Statement of Claims on page 6.

___Yes      ✔ No

a.      If your answer is "Yes", briefly describe the steps taken, including how relief was sought, from whom you sought relief, and the results.

_____

_____

_____

_____

b.      If your answer is "No", explain why administrative remedies were not exhausted.

I have filed numerous *Mercer County Grievance Forms*, and virtually all of the complaint forms filed in the year "2018" haven't been responded to. I forwarded all pink sheets to the *District Clerk's Office* that was entered into the record in Civil Action 16-9374.  The Hon. Judge Peter G. Sheridan, allowed another *Civil Action* to be filed to address the destruction, and unresponsiveness of *Administrative Grievance Forms* at the *Mercer County Correctional Center.*

Additionally, due to the emergent nature of this *Civil Action,* emergency actions are needed by the *US District Court* to stop the planned drugging, continued falsification of psyche records, and the expressed conspiratorial plans of several lieutenant who are employed at the *Mercer County Corrections Center*, who intend to take possession of my legal file and destroy evidentiary documents that are being prepared as this plaintiff works independently on the *Civil Action* that is before the *Honorable* Judge Peter G. Sheridan.

6.      Statement of Factual Claims

**<u>Please See Attached Complaint</u>**

**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

**(UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

---

---

---

---

---

---

---

**Please See Attached Complaint**

---

---

---

---

---

---

---

---

---

7.   Relief   (State briefly exactly what you want the court to do for you. Make no legal arguments.  Cite no cases or statutes)

---

**Please See Relief Attachment**

---

Page **6** of **7**

**FORM TO BE USED BY A PRISONER IN FILING A CIVIL RIGHTS COMPLAINT**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

_____

_____

_____

**Please See Relief  Attachment**

_____

_____

_____

_____

_____

8.    Do you request a jury or non-jury trial? (Check only one)

( ✔ ) Jury Trial   ( ) Non-Jury Trial

I declare under penalty of perjury that the foregoing is true and correct

Signed this _____ day of May, in the Year Two Thousand and Eighteen.

Jonathan Donnell Williams, *Pro Se*

(\*EACH PLAINTIFF NAMED IN THE COMPLAINT MUST SIGN THE COMPLAINT
HERE.  ADD ADDITIONAL LINES IF THERE IS MORE THAN ONE PLAINTIFF.
REMEMBER. EACH PLAINTIFF MUST SIGN THE COMPLAINT).

Page 7 of 7

# United States District Court
# District of New Jersey

## Complaint

*Listing of Parties*

(1) Dr. Glenn Ferguson
   Chief Executive Officer
   Ann Klein Forensic Center
   W. Trenton, New Jersey

(2) Dr. Moisey
   Psychiatrist
   Ann Klein Forensic Center
   W. Trenton, New Jersey

(3) Dr. Douglas Smith
   Psychiatrist
   Ann Klein Forensic Center
   W. Trenton, New Jersey

(4) Dr. Paul
   Psychologist
   Ann Klein Forensic Center
   W. Trenton, New Jersey

**Page No.** /

# United States District Court
# District of New Jersey

## Complaint

Listing of Parties

(5)   Dr. Strathern
      Psychologist
      Ann Klein Forensic Center
      W. Trenton, New Jersey

(6)   Mercer County Prosecutor's
              office
          Public Service
      Trenton, New Jersey

(7)   Timothy Ward, Esq.
          Prosecutor
      Mercer County Prosecutor's
              office
      Trenton, N.J.   08625

(8)   Angelo J. Onofri, Esq.
          Top Prosecutor
      Mercer County Prosecutor's
      office, Trenton, New Jersey

Page No. ___2___

# United States District Court
# District of New Jersey

## Complaint

Listing of Parties

(9)   Judge Thomas Brown
      Superior Court Judge
      Criminal Courthouse
      Trenton, New Jersey

(10)  Sergeant Giovani
      Correctional Sergeant
      Mercer County Correctional Center
      Lambertville, New Jersey

(11)  Christopher "Chris" Christie
      Old Governor
      Current Residential Address
      ↤ Must Be Discovered ↦

(12)  Mr. Aguirre
      Medical Security officer
      Ann Klein Forensic Center
      W. Trenton, New Jersey

**Page No.** 3

# United States District Court
# District of New Jersey

## Complaint

### Listing of Parties

(13)

Paul R. Adezio
Former Record Custodian
Mc Dade Administration Building
Current Residential Address
— Must Be Discovered —

(14)     John Doe # 1
President of "Homeware"
Video Visitation Services
Corporate Mailing Address
— Must Be Discovered —

(15)     Jane Does 1 - 3
"Triage Nurses"
Mercer County Correctional Center
Lambertville, New Jersey

(16)     Mr. S. A. Moon, Sergeant
Law-Enforcement Adjudicater
Mercer County Correctional Center
Lambertville, New Jersey

Page No. ___4___

# United States District Court
# District of New Jersey

## Complaint

Listing of Parties

(17)          Almeen Jenkins
          Medical Security Officer
     Ann Klein Forensic Center
      West Trenton, New Jersey

(18)          Dr. Robert Roth
          Psychiatrist
     Ann Klein Forensic Center
      West Trenton, New Jersey


     * End of Listing *


                    J.H. Willi

Page No.  5

# United States District Court
# District of New Jersey

# Complaint

1. Plaintiff asserts that on **April 30, 2018** at approximately **9:55am** a stranger who identified himself as **"Dr. Paul the *Psychologist"*** stood at my assigned door an proceeded to conduct what is being described as an "evaluation" while I was nude from the waist down, sitting on a toilet bowl, inside of my assigned room.

2. Plaintiff asserts that he pleaded with the psychologist to leave numerous times, while he was nude on the toilet, and he reluctantly agreed to. I expressed that I believed him standing a mere feet peering down on me as I sat exposed on a toilet bowl was tantamount to sexual harassment, and he agreed and walked away.

3. Plaintiff asserts that he does not know who sent this strange doctor to write medical legal documents against my good name. I was never asked to agree or to consent to a so-called "evaluation".

4. Plaintiff asserts that the crime of sexual harassment is a relevant claim in this matter involving ***Psychologist*, Dr. Paul**, considering this complainant was totally nude from the waist down. An area sergeant allowed the outside doctor to walk up to my assigned cell and stare down on me for an extended period of time.

5. Plaintiff asserts that he was informed that the strange doctor had already prepared some sort of a pre-written so-called "kill report" against this plaintiff in favor of the state's prosecution against this complainant.

6. Plaintiff asserts that he is currently preparing to stand trial at the *Mercer County Criminal Courthouse* for a charge that stems from a wrongful charge of aggravated assault that was leveled against this complainant.

# United States District Court
# District of New Jersey

# Complaint

7. Plaintiff asserts that his pinky finger was violently chopped off in a solid steel door at the *Ann Klein Forensic Center where **Psychologist Dr. Paul** was sent from.*

8. Plaintiff asserts that following that criminal act of amputation that is currently being litigated before **Judge Peter G. Sheridan's *USDJ*** who presides in the *United States Courthouse* located at 402 East State Street, Trenton, New Jersey.

9. Plaintiff asserts that illegal orders was signed by Judge Thomas Brown which gave instructions for a psychological evaluation to be conducted in violation of **N.J.S.A. 2C:4-5a.**

10. Plaintiff asserts that **N.J.S.A. 2C:4-5** was cleverly violated by excluding plaintiff from the selection process of an impartial, fair minded Psychologist.

11. Plaintiff respectfully asserts that the following is an ellipsis quotation found in **N.J.S.A. 2C:4-5** which states "The psychiatrist or licensed psychologist so appointed shall be ...**from a list agreed to by** the court, the prosecutor and **the defendant**."

# United States District Court
# District of New Jersey

# Complaint

**12.** Plaintiff respectfully asserts that the following is N.J.S.A. 2C:4-5 as it appear unedited:

### 2C:4-5.  Psychiatric or psychological examination of defendant
### with respect to fitness to proceed

a. Whenever there is reason to doubt the defendant's fitness to proceed, the court may on motion by the prosecutor, the defendant or on its own motion, appoint at least one qualified psychiatrist or licensed psychologist to examine and report upon the mental condition of the defendant. The psychiatrist or licensed psychologist so appointed shall be either:

(1) **From a list agreed to by the court, the prosecutor and the defendant; or**

(2) **Agreed to by the court, prosecutor and defendant.** Alternatively, the court may order examination of a defendant for fitness to proceed by the Department of Human Services. The department shall provide or arrange for examination of the defendant at a jail, prison or psychiatric hospital. However, to ensure that a defendant is not unnecessarily hospitalized for the purpose of the examination, a defendant shall not be admitted to a State psychiatric hospital for an examination regarding his fitness to proceed unless a qualified psychiatrist or licensed psychologist designated by the commissioner determines that hospitalization is clinically necessary to perform the examination. Whenever the qualified psychiatrist or licensed psychologist determines that hospitalization is clinically necessary to perform the examination, the court shall order the defendant to be committed to the custody of the Commissioner of Human Services for placement in a State psychiatric hospital designated for that purpose for a period not exceeding 30 days. A qualified psychiatrist or licensed psychologist retained by the defendant or by the prosecutor shall, if requested, be permitted to examine a defendant who has been admitted to a State psychiatric hospital.

b. The report of the examination shall include at least the following: (1) a description of the nature of the examination; (2) a diagnosis of the mental condition of the defendant; (3) an opinion as to the defendants capacity to understand the proceedings against him and to assist in his own defense. The person or persons conducting the examination may ask questions respecting the crime charged when such questions are necessary to enable formation

# 𝔘nited 𝔖tates 𝔇istrict ℭourt
# 𝔇istrict of 𝔑ew 𝔍ersey

# ℭomplaint

of an opinion as to a relevant issue, however, the evidentiary character of any inculpatory statement shall be limited expressly to the question of competency and shall not be admissible on the issue of guilt.

c. If the examination cannot be conducted by reason of the unwillingness of the defendant to participate therein, the report shall so state and shall include, if possible, an opinion as to whether such unwillingness of the defendant was the result of mental incompetence. Upon the filing of such a report, the court may permit examination without cooperation, may appoint a different psychiatrist or licensed psychologist, or may commit the defendant for observation for a period not exceeding 30 days except on good cause shown, or exclude or limit testimony by the defense psychiatrist or licensed psychologist.

d. The report of the examination shall be sent by the psychiatrist or licensed psychologist to the court, the prosecutor and counsel for the defendant.

13. Plaintiff asserts that he would never agree nor consent to a psychological evaluation from anyone affiliated, employed, or connected to the *Ann Klein Forensic Center* due largely and in-part to multi-million dollar Civil Action that is still currently being ligated against state employee, **Medical Security Officer, Almeen Jenkins** who is still influentially employed at the *Ann Klein Forensic Center.*

14. Plaintiff asserts that he was informed by a wittiness who stated **"Doctor Paul was sent down here to just touch your door and walk away."**

15. Plaintiff asserts that the witness further stated, **"Ann Klein does not want you to win your civil action and they are desperate to demonize you on the records to stop you from getting any money then bailing out of jail with it."**

16. Plaintiff asserts that the witness, who will be identified later due to safety concerns, additionally stated, "I heard several officer talking loudly in the courthouse that you will learn that they all work in the same line of business."

# United States District Court
## District of New Jersey

## Complaint

17. Plaintiff asserts that he asked the witness exactly what was he (the witness) referring to when he stated "line of business".

18. Plaintiff asserts that the witness then replied, "The New Jersey State government. They all work for the government man! Ann Klein is also for people who got too smart for their own good. You're not the only person with an above average IQ who has been destroyed by government doctors on the government records. You know there doing all they can to drug you up because they know they destroyed your family ties by keeping you illegally locked up for a half of decade with no got damn trial. I like you man, but this state is largely being run by *Pennsylvanian* residents in high places who are illegally employed at Ann Klein and all *Mercer County Criminal Courthouse* where they intend to hang you with twenty years in prison for throwing one punch".

19. Plaintiff asserts that the witness continued by stating, "You aint slow man. You know they wanna drug you up because they think you too smart. You now are filing lawsuits. They know they probably won't be able to stop all of your lawsuits, so they must destroy your credibility, and they'll do that by sending their very own doctors who serves their best interest".

20. Plaintiff asserts that he defamed in a malicious and evil evaluation written by another handpicked government Psychologist name **Dr. Strathern** who was sent to the *Mercer County Correctional Center* to write a described "mental evaluation" that was intended to help Dr. Strathern' current employer.

21. Plaintiff asserts that doctor Strathern's current employer is **Dr. Glenn Ferguson** who is the Chief Executive Officer at the *Ann Klein Forensic Center.*

# United States District Court
# District of New Jersey

# Complaint

**22.** Plaintiff asserts that under the leadership of **Dr. Glenn Ferguson** many violation of the criminal code have been committed and the above named *CEO* has failed to properly notify authorities whom he knew would take real preventative actions.

**23.** Plaintiff asserts that *Psychologist Paul* was sent in to write an adversarial report against this Plaintiff immediately following this plaintiff writing a letter to **Senator Shirley Turner** thanking her for her legislative decision to allow all detainees at the *Mercer County Correction Center to* finally be permitted to have legislative mandated contact visits with family members.

**24.** Plaintiff asserts that the *Mercer County Correction Center,* Commanding Lieutenants have all fail to take any actions to operate the *Mercer County Corrections Center* in compliance with newly enacted **Senate Bill 1808.**

**25.** Plaintiff asserts that he lobbied all New Jersey State Representative, namely

- o **Hon. Donald M. Payne, Jr. (D) 10th Congressional District**
- o **Hon. Leonard Lance (R) *7th Congressional District***
- o **Hon. Leonard Lance (R), 7th Congressional District**
- o **Hon. Rodney P. Frelinghuysen (D) 11th Congressional District**
- o **Hon. Williams Pascrell, Jr. (D) 9th Congressional District**
- o **Hon. Albio Sires (D) 8th Congressional District**

in the following letter that is entered into this complaint in its entirety, beginning on the next page.

# United States District Court
# District of New Jersey

## Complaint

My Newly Assigned
Voter ID Number Is: 101444152

**Jonathan D. Williams**
1750 River Road
Lambertville, New Jersey 08625

**Hon. Senator Shirley K. Turner**
*State House*
P.O. Box 099
Trenton, New Jersey 08625

### Re: Letter of Thanks & Humble Respect

Dear Senator Turner,                                    **April 1, 2018**

Please allow me to express my over welling gratitude, respect, and love for your sound judgement with the recent enactment of **Senate Bill 1808.**

Your compassion for all of the *presumed to be totally innocent* detainees, and all inmates throughout the Garden State is indeed historical. Not many elected officials bother to even entertain conversations about the fathers, mothers, and children who are oftentimes, wrongfully and distressingly jailed. Many later prove their innocence, I must add.

It is so very important that your recently enacted *Legislative Bill* be recognized on a national scale and presented by a Courageous Congressional Representative. I am sending a copy of your

1

enormous *Bill of Love for Humanity,* inclusive of our fellow Americans who are incarcerated, to all *Congressional Representatives* from out of our enormously powerful and influential State.

I am temporarily being held at the *Mercer County Correctional Center*, pending trial. I am eager to prove my innocence! I am confident that the *Justice System* will reflect fairness and impartiality, when all matters are presented before a fair minded jury, Senator.

On behalf of all of the innocent Americans who are being detained in county jails across New Jersey, please allow me to extend our collective respect for your courageous Bill. I cannot fully express just how much it means to have a fearless representative such as you. Your *intestinal fortitude* is reflected through **Senate Bill 1808!**

Senator, I am sending a copy of this letter to all five Congressional Representatives from out of the State of New Jersey. They are the Great:

1. Hon. Donald M. Payne, Jr. (D) *10th Congressional District* (973) 645-3213
2. Hon. Rodney P. Frelinghuysen (D) *11th Congressional District* (973) 984-0711
3. Hon. Williams Pascrell, Jr. (D) *9th Congressional District* (973)523-5152
4. Hon. Albio Sires (D) *8th Congressional District* (201) 309-0301

I am certain that the *Republican Party*, who are often at odds with our party, will agree from across the aisle, that even **Republican Grandparents** should be allowed to give their husbands, grandchildren, and other family members, loving embraces during correctional facility, visitations, nationwide.

That's why I am sending a copy of your **HISTORICAL SENATE BILL**, along with a copy of this *Letter of Thanks* to, **Congressman Leonard Lance (R),** who represents the *7th Congressional District in New Jersey.*

2

It is my hopes and prayers that politics will be set aside, and Congressman Lance can and will magnify the word *Honorable,* for the sake of our fellow Americans. The overwhelming majority of inmates imprisoned across our Great Nation will one day walk our roads, streets, malls, and even through our parks once again.

So it is critically important that we as *leaders,* do all we can to <u>decrease</u> the psychological devastation of incarceration, by minimizing the overwhelming impact of *Separation Anxiety* that can and will improve when for instance, a father gives his little daughter a loving hug, that will help in her overall mental development.

The *Power of Touch*, received through a hug from a parent, can only increase the likelihood of our fellow Americans contributing to the overall productivity of our most challenged nation, upon the completion of serving debt(s) to our society.

Senator, you had the courageous ability to recognize and to see the State-wide benefit of family contact visits. <u>That is why I am brought to tears.</u>

*In God We Trust*, as well as you.

I love you!  **We love you**!  Thank you **so very much** for the passage of **Senate Bill No. 1808**!

Most Respectfully & Appreciatively,

*Jonathan D. Williams*

JDW/file
C:
Hon. Donald M. Payne, Jr. (D) 10th Congressional District
Hon. Leonard Lance (R), 7th Congressional District
Hon. Rodney P. Frelinghuysen (D) 11th Congressional District
Hon. Williams Pascrell, Jr. (D) 9th Congressional District
Hon. Albio Sires (D) 8th Congressional District

**3**

# United States District Court
# District of New Jersey

# Complaint

26. Plaintiff asserts that his current government assigned *Deputy Public Defender* **Jessica Lyons, Esq. who** is actively assisting **Mercer County Prosecutor Timothy "Tim" Ward** in securing a wrongful conviction against this plaintiff, by deliberately refusing to assist or participate in defense efforts with the exception of grandstanding during every court appearance, and working <u>adversarially</u> to silence the many truths, that this Plaintiff attempts to articulate into the record in anticipation of Pre-Trial Transcripts.

27. Plaintiff asserts that he has expressed to the Deputy Public Defender a need for Grand Jury Minutes and all requests for said evidentiary records have been denied, by the controlling Deputy Public Defenders failure to obtain grand jury transcripts.

28.  Plaintiff asserts that Prosecutor Timothy Ward will has entered an assumed named onto hundreds of legal documents.

29. Plaintiff asserts that *Mercer County Prosecutor* **Timothy Ward's** name is being illegally entered on various court records as "Tim".

30. Plaintiff asserts that the usage of any assumed name, moniker or nickname will confuse historians who will review all litigation baring the name of Jonathan Williams.

31. Plaintiff asserts that he revealed that fact that *Prosecutor* **Timothy Ward** is a convicted criminal during court appearance before *Superior Court*, **Judge Thomas Brown.**

32. Plaintiff asserts that the Judge fail to launch an independent fact finding investigation that would have revealed numerous crimes committed by **Timothy Ward, Esq.**

# United States District Court
# District of New Jersey

# Complaint

33. Plaintiff asserts that **Judge Thomas Brown** has ordered the violent assault of this plaintiff in an attempt to stop this plaintiff from speaking into the microphone that is positioned at the defense table.

34. Plaintiff asserts that he was given at least one illegal order to not speak, which Plaintiff asserts is an egregious violation of the *United States Constitution* which guarantees freedom of speech.

35. Plaintiff asserts that he was in the midst of establishing many facts that were relevant to him being released from captivity, and it is believed for that reason *Superior Court* **Judge Thomas Brown** quickly silenced this Plaintiff.

36. Plaintiff asserts that once the transcripts of every single word articulated during all Pre-Trial Conference proceeding held before *Superior Court Judge* **Thomas Brown** are carefully reviewed by an impartial, corrective authority, that it will reveal many *violations of the 'Cannons'* intended for the *Judiciary New Jersey Superior Court* .

37. Plaintiff asserts that he is not being fed a balanced nutritious meal at the *Mercer County Corrections Center.*

38. Plaintiff asserts that has studied the *Merck Manual of Medical Information*, and discovered that due to Plaintiffs illegal deprivation of proper nutrition he has possibly exhibited symptoms similar to those seen in schizophrenia.

39. Plaintiff asserts that he has never received any Vitamin C as required in a lawful balanced diet. As a result Plaintiff is **Vitamin C Deficient**.

40. Plaintiff asserts that he has not received any Potassium in his diet since his detention at the *Mercer County Correctional Center.* As a result Plaintiff is **Potassium Deficient.**

# United States District Court
# District of New Jersey

# Complaint

**41.** Plaintiff asserts that he has never received a sufficient amount of calories in his daily diet while detained at the *Mercer County Correctional Center*. As a consequence Plaintiff is **Calorie Deficient, Described as Undernutrition.**

**42.** Plaintiff asserts that an **Officially Licensed Dietitians** is in need of immediate hire at the *Mercer County Correctional Center.*

**43.** Plaintiff asserts that he has suffered numerous reoccurring **Respiratory Infections** due to the nutritional imbalance in the diet that he has been subjected to.

**44.** Plaintiff asserts that he has numerous medical prescriptions for Mucinex, Moltrin, and Sinus Tablet prescribed at the *Mercer County Correctional Center.*

**45.** Plaintiff asserts that the medical contractor who is employed by the *Mercer County Correctional Center*, to provide medical services to all *Presumed to be Innocent* Civilian Detainees have illegally bilked all citizens being held currently and in years pass a the above named facility for illegal so-called "co-payments".

**46.** Plaintiff asserts that the "co-payments" mentioned above in section No.33 is in fact extortion by a private contracting company whose primary objective is to make a profit.

**47.** Plaintiff asserts that he has been charge a significant amount of money for "medical co-payments" that were never properly authorized by legislative authorities nor by any presiding *Superior Court* or *District Court Justice* who overrules in the district.

# United States District Court
# District of New Jersey

# Complaint

**48.** Plaintiff asserts that the aforementioned **Senate Bill (1808)** is in fact what fueled the decision to allow a civilian to enter a high security close custody area, then to be illegally allowed to literally stand over me while I was nude on the toilet bowl defecating.

**49.** Plaintiff asserts that the decision made by **Sergeant Giovani** was a bad call.

**50.** Plaintiff asserts that the female observed this Plaintiff in the nude defecating.

**51.** Plaintiff asserts that female **Sergeant Giovani** had advance knowledge that Plaintiff; Jonathan Williams was not dressed, when she suspiciously permitted an *Ann Klein Forensic Center,* **Psychologist Dr. Paul**, to commence a so-called Psych Evaluation of this plaintiff, while Plaintiff was in the nude.

**52.** Plaintiff asserts that he observed **Sergeant Giovani** snickering and laughing shortly after Dr. Paul walked off in apparent disgust.

**53.** Plaintiff asserts that due to the open mischievousness of **Sergeant Giovani** that the acts committed by her rises to the level of **wantonness**, and is sufficient grounds **warranting an immediate court ordered termination of above named defendant**.

**54.** Plaintiff asserts that this complaint is a sworn record and as a *matter of law*, is sufficient all in of itself to support a court ordered termination.

Page 13 of 35
Of Complaint

# United States District Court
# District of New Jersey

# Complaint

55. Plaintiff asserts that he has had a documented, historical conflict with **Sergeant Giovani** and that this is not her first glaringly, bad call, made that directly involves this Plaintiff.

56. Plaintiff asserts that **Sergeant Giovani** entered false reports into the record that directly relate to this plaintiff being pushed down a flight of stairs as she was escorting this Plaintiff from the clinic area.

57. Plaintiff asserts that progressive discipline as outlined in the *New Jersey Administrative Code* is insufficient in the matters involving **Sergeant Giovani**.

58. Plaintiff asserts that if mere progressive discipline in allowed by the *United States District Court*, that the wrong message will be sent from the federal judiciary, to county personnel, who are employed at the *Mercer County Correctional Center*.

59. Plaintiff asserts that he was the victim of degrading and humiliating sexual harassment at the hands of Psychologist Dr. Paul illegally conducted a psychological evaluation while this plaintiff was totally naked from the waist down.

60. Plaintiff asserts that he pleaded with Doctor Paul to simply walk away several times, and Dr. Paul refuse to.

61. Plaintiff asserts that he was humiliated, and embarrassed by the willful actions of Psychologist Dr. Paul.

Page 14 of 35
Of Complaint

# United States District Court
# District of New Jersey

# Complaint

**62.** Plaintiff asserts that had he been given the lawful opportunity to participate in the selection process of a Psychologist and/or Psychiatrist, that he would have never consent to any doctor who is employed under the *color of the state.*

**63.** Plaintiff asserts that he is certain that '*Loyalty to the hand that feeds an individual*' is and will always be an overwhelming factor that will always have this plaintiff uneasy with any and all government doctors who are eager to freely write opinions and conclusions on this Plaintiff.

**64.** Plaintiff asserts that many of the psychiatric reports that have been entered into the government records in the *State of New Jersey* are fabricated, and are part of a wide scale criminal conspiracy, meant to unlawfully imprison this plaintiff of false charges of described "aggravated assault".

**65.** Plaintiff asserts that all of the illegal IMAR hearings that were held at the *Ann Klein Forensic Center*, that gave illegal, felonious so-called authorization to have this plaintiff violently drugged against his will, were all proven to be illegal decisions that this Plaintiff documented at each any every IMAR Hearing held at the *Ann Klein Forensic Center,* at each punitive intended, involuntary commitment.

**66.** Plaintiff asserts that even though he was ordered by *Essex County* to simply have a thirty day (30) evaluation performed, *Ann Klein Forensic Center* staff illegal held me hostage beyond the time permitted by the Court.

# United States District Court
# District of New Jersey

# Complaint

**67.** Plaintiff asserts that he was kept beyond the legal time limit at the **Ann Klein Forensic Center** in an attempt to destroy plaintiff's intellectual faculties before Plaintiff had an opportunity to stand trial, and take the stand in his own defense.

**68.** Plaintiff asserts that he refuse to sign intake documents that gave consent to have plaintiff experimented on while at the *Ann Klein Forensic Center*.

**69.** Plaintiff asserts that due to his refuses to sign the many documents hastily shoved in the front of him while in the intake unit, that the **Staff Psychiatrist Dr. Moisey** literally lied on the incoming reports and stated that plaintiff reported auditory hallucinations where a little green man was talking to him.

**70.** Plaintiff asserts that he never made any statement remotely similar to any Psychologist or Psychiatrist on planet earth, on any date and time.

**71.** Plaintiff asserts that during two of the illegal, farce IMAR Hearings held at the *Ann Klein Forensic Center*, plaintiff sought testimony from his Presbyterian Pastor/Prophetess *The Great* Anitta Wright.

**72.** Plaintiff asserts that during both occasions when Prophetess Anitta Wright arrives to give testimony on behalf of Plaintiff that she was treated cruelty and disrespectfully by employees at the Ann Klein Forensic Center who all are employed under the color of state law.

# United States District Court
# District of New Jersey

# Complaint

**73.** Plaintiff asserts that *Prophetess* Wright was so distraught by the intense, glaring, and tensions at an IMAR Hearing that Plaintiffs beloved Pastor, literally walked out of the room and departed in disgust.

**74.** Plaintiff asserts that when his Pastor exited the room several staff including the doctors present began to snicker in an extremely malicious manner reflective of intentional, and deliberate wantonness.

**75.** Plaintiff asserts that prior to his Pastor leaving the IMAR Hearing; plaintiff had devolved chills going up and down both of his arms.

**76.** Plaintiff asserts that whenever he has experienced chills ('goose bumps') running up and down his arms' in the past, that, that has always been a supernatural warning from Plaintiffs *Higher Power*, warning Plaintiff of Dangerous, Nefarious, Negative Energy inside of an individual who has come within Plaintiffs immediate circumference.

**77.** Plaintiff asserts that he developed **Parkinson Disease** as a direct result of the OVERDOSE OF PSYCHOTROPIC ORGAN DAMAGING TOXINS that was violently stabbed into Plaintiff's body against this Plaintiffs consent.

**78.** Plaintiff asserts that he was given **Anti-Parkinsonian Drugs** to attempt to stop the deliberately caused disease that plaintiff complained about in extensive detail, inside of hundreds of documents that Plaintiff entered into the record at the *Ann Klein Forensic Center*.

# United States District Court
# District of New Jersey

# Complaint

79. Plaintiff asserts that he would have never given consent to have known organ damaging drugs injected into his body.

80. Plaintiff asserts that he is now sterile as a result of the illegal, unnecessary drugs that were savagely, and barbarically, stabbed and injected into this plaintiff buttock after being violently slammed face down by nearly a dozen known felons who are illegally employed at the *Ann Klein Forensic Center.*

81. Plaintiff asserts that he complained about females being violently raped and recorded with wireless phones at the *Ann Klein Forensic Center* on official court records entered into the Essex County Law Division.

82. Plaintiff asserts that Former **Governor Christopher "Chris" Christie** failed to take appropriate actions to stop the many rapes being committed by violent ex-felons who were, and who still are employed under the color of state law, at the *Ann Klein Forensic Center.*

83. Plaintiff asserts that the **Former Governor** named above responded to this plaintiff report after the matter was forwarded to the *Governor's Office* by court staff employed by Essex County.

84. Plaintiff asserts that due to the failure and neglect of Christopher Christie, Esq. numerous other women were raped at the historically corrupt *Ann Klein Forensic Center* located in West Trenton.

**Page 18 of 35**
**Of Complaint**

# United States District Court
# District of New Jersey

# Complaint

**85.** Plaintiff asserts that the Trentonian exposed the fact that women were being raped at *Ann Klein Forensic Center*, in the second half of the year two thousand and seventeen (2017).

**86.** Plaintiff asserts that he became severely emotionally distraught when he read the *Trentonian* newspaper reporting the continued rapes at the *Ann Klein Forensic Center,* due to the fact that the savagery was reported to **Chris Christie, Esq.** over a year prior to the many rapes of vulnerable, mentally ill, young women.

**87.** Plaintiff asserts that *Medical Security Office*r **Mr. Aguirre** literally threw an Asian American patient down a flight of concrete steps inside of the *Ann Klein Forensic Center.*

**88.** Plaintiff asserts that *Medical Security Office*r **Mr. Aguirre** was illegally rehired after he was presumably fired, only to be rehired at the same facility.

**89.** Plaintiff asserts that *Medical Security Office*r **Mr. Aguirre** inserted a magic marker into this plaintiff's rectum during one violent forced drugging that he took a part in.

**90.** Plaintiff asserts that he began to bleed from the rectum and packed the area with a thick wad of toilet tissue after the *Medical Security Officers at the Ann Klein Forensic Center* had all backed out of Plaintiff's cell after a violent illegal injection.

**91.** Plaintiff asserts that made several supervisors directly aware that he was bleeding from the rectum, and that he felt lightheaded from the overdose of so-called "medication" that was violently and involuntarily injected into this plaintiff's right buttock.

# United States District Court
# District of New Jersey

# Complaint

92. Plaintiff asserts that a lot of the illegal decisions rendered by Supervisory authorities at the *Mercer County Correctional Center* follows this plaintiff's acquisition of over a hundred, newly enacted *Senate and Assembly Bills*, that Plaintiff recently obtained via. the *Open Public Records Act* (O.P.R.A.).

93. Plaintiff asserts that he discovered newly enacted Senate Bills that the Honorable Shirley Turner sponsored and had enacted, that require all uniformed correctional captains, uniformed correctional lieutenants, uniformed correctional sergeants, and uniformed correctional officers to all wear a **Body Cameras Equipped with Audio Recording Devices.**

94. Plaintiff asserts that numerous lieutenants have insinuated that they have the unified power in Mercer County to get the "law lady", a demeaning, and belittling reference to the **Hon. Senator Shirley Turner,** to change the *Legislative Senate Bills* that she recently, courageously, had enacted.

95. Plaintiff asserts that he began to raise public awareness of the newly enacted senate bill that was passed rather recently this year (2018), and that is what partially fueled the above decision by Sergeant Giovani to allow a civilian to literally conduct a so-called psychological evaluation while plaintiff was naked on the toilet.

# United States District Court
# District of New Jersey

# Complaint

**96.** Plaintiff asserts that he has been illegally stripped searched without probable cause, along with thousands of other presumed to be innocent pre-trial detainees at the Mercer County Correctional Center.

**97.** Plaintiff asserts that the United Nations has addressed many of the injustices being inflicted and committed against this plaintiff and similarly situated pre-trial detainees in numerous universal laws enacted by the International Governing Authority.

**98.** Plaintiff asserts that he is not being afforded all of the rights guaranteed him as a Pre-Trial Detainee.

**99.** Plaintiff asserts that he has been illegally classified as being an inmate, when such classification is reserved ONLY for those who have been found guilty of a crime.

**100.** Plaintiff asserts that he has been illegally subjected to long-term punitive isolation at the Mercer County Correctional Center in violation of *United Nations Enacted Laws*, Federal Laws, State Laws, as well as a violation of the New Jersey Administrative Code (Title 10 Law).

# United States District Court
# District of New Jersey

# Complaint

**101.**     Plaintiff asserts that he discovered a Legislative Bill that was recently enacted this

year (2018) by the **Honorable Senator Shirley Turner** that mandated all contractors

providing **"Video Visitation Services"** inside of correctional facilities in New Jersey to

never charge beyond eleven cents per minute. ($00.11).

**102.**     Plaintiff asserts that he began to raise public awareness of that particular Senate

Bill and that's when the many acts of a harassing nature began.(Plaintiff will expand of

detailed harassment in an amendment to this complaint)

**103.**     Plaintiff asserts that the inmates on the *A-Pod Housing Area* that are not on

protective custody like plaintiff at the time of the writing of this complaint, were all

illegally charged one (1) dollar for a mere wo minutes on the **video visitation monitor**

**installed on the wall alongside the correctional officers desk.**

# United States District Court
# District of New Jersey

# Complaint

**104.**     Plaintiff asserts that he attempted to obtain the *Chief Executive Officers* full name

and the mailing address to his/her corporate office, and the ***Record Custodian/ Mercer***

***County Counsel*, Mr. Paul R. Adezio,** lied under a government letterhead and stated that

no record existed, and that there were no *video visiting monitors* installed inside of the

jail.     THAT IS A BLANT LIE!

**105.**     Plaintiff asserts that the record Custodian named above has lied in numerous

legal matters where the public has lawfully requested public records.

**106.**     Plaintiff asserts that untrue Case Law quotations have been used to deny this

plaintiff records by   ***Record Custodian/ Mercer County Counsel*, Mr. Paul R. Adezio.**

**107.**     Plaintiff asserts that **AG Entertainment, LLC, 374 N.J. Super. 534 (App. Div.**

**2005)**  has been **feloniously misused** by *Attorney at Law* **Paul R. Adezio** by stating that

the following language was recorded in the litigation, when in actuality it never was:

**"…is not intended as a research tool…to force government officials to identify and**

**siphon useful information."**.

# United States District Court
# District of New Jersey

# Complaint

**108.**     Plaintiff asserts that the above quotation was used to prevent the public at large

form lawfully learning details that often could have prevented historical corruption in the

*Capitol County of Mercer.*

**109.**     Plaintiff asserts that due to the above **factual allegations** the *Record Custodian*

named above should be lawfully removed from public office by order of the *United*

*States District Court.*

**110.**     Plaintiff asserts that due to the severity of the enormous deception, and

misrepresentation of the American Legal System by a *Sworn Officer of the Court*, **Mr.**

**Paul R. Adezio,** who egregiously committed all factually alleged, aforesaid acts, while

entrusted as        the Capitol County Public Record Custodian is utterly appalling, an

deserving of        **Swift Justice** from the *United States District Court.*

# United States District Court
# District of New Jersey

# Complaint

111.     Plaintiff asserts that due to his limited knowledge of the full magnitude of

Corrective Judicial Authority, invested in the United States District Court; plaintiff is

humbly petitioning the *United States District Court,* to act independently in administering

severe corrective justice, on behalf of all taxpayers who were duped, into paying the

salary of Mr. Paul R. Adezio, while he lied to them, and denied the public, their very own

public records, that are stored in the ***Public's Government Buildings.***

112.     Plaintiff asserts that a *District Court* Order all ***Records of Denial*** of ***Public***

***Records,*** that are on record at the, *Office of the Counsel Mercer County Counsel*, inside

of the McDade Administration Building, located at: 640 South Broad Street, Trenton,

New Jersey be immediately handed over to the United States Marshalls Service.

*Continued on Next Page*

# United States District Court
# District of New Jersey

# Complaint

**113.**    Plaintiff asserts that due to the enormous criminal nature of corruption factually alleged above, plaintiff is seeking an **EMERGNCY   SEARCH   WARRANT** of the Offices of Mr. **Paul R. Adezio.**  Plaintiff has factual reasons to support the belief that if a search warrant isn't handed down with immediacy, that that will only permit the Record Custodian and his staff to delete, and to destroy all records reflecting the illegal of Public Records stated above.

**114.**    *Plaintiff* asserts that due to the deliberate infliction of calorie deficiency, *Plaintiff* has suffered many symptoms directly related to the medical conditions brought about by above said deficiency.

**115.**    *Plaintiff* asserts it is widely known in medicine by all *Medical Doctors* that a deficiency in calories, results in fatigue, an inability to stay warm, diarrhea, irritability, and can cause unresponsiveness, referred to as "stupor".

**116.**    *Plaintiff* asserts that due to his continuing deficiency in calories while being illegally detained at the *Mercer County Correctional Center, Plaintiff has* suffered a weakening of his immune system that frequently results in respiratory infections as stated above.

# United States District Court
# District of New Jersey

# Complaint

**117.**     *Plaintiff* asserts that when it was determined medically that he had a viral infection, and received many different congestion medications, that the "Triage Nurses" all fail to properly order an *increase in calories*, when it is widely known in medicine that whenever a patient develops an infection, that such an aliment requires an increase in the daily calorie intake of all patients for a thorough and complete recovery.

**118.**     *Plaintiff* re-asserts that due to an inability to stay warm, as a consequential result of a **deficiency of calories** in *Plaintiff's* physical structure, coupled with no heat being provided in the "Hole", *Plaintiff* developed numerous negligently caused, preventable ailments.

**119.**     *Plaintiff* asserts that all correctional officers assigned to the *R&D Floor* punitive housing area, all fail to fulfill their individual responsibility which was to ensure a safe environment for *Plaintiff* that requires all immediate care givers to take emergency actions when they hear the cries of freezing inmates in sub-zero freezing cells.

**120.**     *Plaintiff* respectfully re-asserts that he is presumed to be innocent, and is a **Pre-Trial Detainee**, not an inmate of any institution.

# United States District Court
# District of New Jersey

# Complaint

**121.** *Plaintiff* respectfully re-asserts that as a **Pre-Trial Detainee** he is legally protected by even more federal laws that prohibit the mistreatment and **Cruel & Unusual Punishment** of civilians who haven't been convicted, or found guilty of any wrong doing at all.

**122.** *Plaintiff* asserts that he has been defamatorily and unlawfully described as a so-called inmate throughout the files that are being adversarially amassed against this *Plaintiff* inside of the *Mercer County Correctional Center* and elsewhere.

**123.** *Plaintiff* urgently re-asserts that as a **presumed to be innocent civilian** who is only being detained due to an inability to pay a monetary bail, Plaintiff asserts that he and others *similarly situated* should not be illegally subjected to punishment described as disciplinary actions. The Courts decided that presumed to be innocent detainees cannot be punished at all. That was established in the following cited cases:

> ➤ **City of Revere v. Massachusetts General Hospital**, 463 U.S. 239,244, 103 S. Ct. 2979(1983)

> ➤ **Bell v. Wolfish**, 411 U.S. 520 535, 99 S. Ct. 1861 (1979)

# United States District Court
# District of New Jersey

# Complaint

124.     *Plaintiff* asserts that he and *similarly situated* **Pre-Trial Detainees** can only be corrected as a matter of law, inside of a correctional, penological environment, once a finding of guilt has been arrived at by a **fairly seated jury**, and all due process rights have been afforded.

125.     *Plaintiff* asserts that the **New Jersey Administrative Code**, which is being **selectively enforced** at the *Mercer County Correctional Center* (County Jail) has been historically, illegally implemented on *presumed to be innocent* civilians **Pre-Trial Detainees.**

126.     *Plaintiff* asserts that he and other similar situated **Pre-Trial Detainees** have been intimidated by illegally applied, **New Jersey Administrative Code** disciplinary actions.

127.     *Plaintiff* asserts that threats to illegally enforce the non-applicable **New Jersey Administrative Code** upon civilian *Pre-Trial Detainees* has caused **health damaging, catastrophic stress** upon thousands of civilians who were illegally subjected to **penological practices**.

# United States District Court
# District of New Jersey

# Complaint

**128.**    *Plaintiff* asserts that *presumed to be innocent* **Pre-Trial Detainees** are being intimidated and subjected to slavery by performing labor intensive jobs that are performed involuntarily.

**129.**    *Plaintiff* asserts that psychological distress is knowingly being inflicted upon countless **Pre-Trial Detainees** here at the *Mercer County Correctional Center* by jailers who oversee all *Pre-Trial Detainee* **slaves,** as they labor throughout the M.C.C.C. facility performing labor intensive jobs, without compensation, while under the blistering hot sun, and while **slaving inside of the sweltering hot pantries**, and outdated food preparation areas inside of the M.C.C.C. facility.

**130.**    *Plaintiff* asserts that **Pre-Trial Detainees** have been subjected to **maliciously inflicted, psychological anguish,** by being illegally, and nefariously placed inside of the basement area of M.C.C.C. for punitive purposes, resulting from an unwillingness to work anymore oftentimes after experiencing extreme fatigue.

**131.**    *Plaintiff* asserts that whenever an American who is presumed to be innocent of a crime is unwilling to work at the MCCC facility, they are subjected to severe disciplinary actions that are illegally handed down by a law enforcement adjudicator, described as an in-house so-called, "*Courtline Hearing Officer*".

# United States District Court
## District of New Jersey

# Complaint

**132.**     *Plaintiff* asserts that the illegal punitive disciplinary hearings are held in an area
described as the I.D.R., which is an acronym for, 'Inmates Dining Room'.

**133.**     *Plaintiff* asserts that no other described "correctional facility" in the entire *State of
New Jersey,* permits nor allows any uniformed law enforcement authorities to function as
adjudicative authorities.

**134.**     Plaintiff asserts that he nearly died as a result of a negative reaction to chemical
psychotropic drugs that were illegally and Brutally Stabbed/Injected into Plaintiff's body
for NON-EMERGENCY REASONS while he was punitively held at the *Ann Klein
Forensic Center*, in an attempt to "break his spirts" as it was described by **Medical
Security Officer Almeen Jenkins.**

**135.**     Plaintiff asserts that the mis-treatment that is described as "breaking a person's
spirit", that Plaintiff was subjected to at the *Ann Klein Forensic Center* entailed Plaintiff
being brutally beat by staff, sexually violated, and subjected to the intentional infliction
of sadistic psychological torture.

**136.**     Plaintiff asserts that he was chained to an illegally constructed  **Punitive Torture
Bed**, after Plaintiff was forced down onto his back while on the Unit 2 Housing Area.

**137.**     Plaintiff asserts that the illegal punitive bed has with solid steel rings surrounding
the bed frame.

# United States District Court
# District of New Jersey

# Complaint

**138.**    Plaintiff asserts that cruelty was deliberately inflicted by the sadistic infliction of starvation by the deliberate issuance of extremely small food portions that would leave Plaintiff unable to sleep throughout the night, due to significant discomfort caused by *punitively inflicted hunger pangs*.

**139.**    Plaintiff asserts that pressure point torture by the repeat placement of knees down and into the spinal cord area of this plaintiff was sadistically inflicted during virtually all of the brutal, unwanted, brutal injections of OVERDOSES, of brain cell damaging, psychotropic, punitive, chemical-compounds.

**140.**    Plaintiff asserts that he complained about the illegal food portion being given to patients at the *Ann Klein Forensic Center*, and Plaintiff was told to shut the f**k up by **Dr. Robert Roth.**

**141.**    Plaintiff asserts that **Dr. Robert Roth** is no longer a bona fide resident of New Jersey and that his employment at the *Ann Klein Forensic Center* is illegal due to residency requirements being violated.

**142.**    Plaintiff asserts that **Dr. Robert Roth** does not possess a *Psychiatry License* in the *State of New Jersey*.

**143.**    Plaintiff asserts that complaints against **Dr. Robert Roth** are detailed and specific in numerous *Civil Actions* filed against the illegally employed so-called "psychiatrist".

# United States District Court
# District of New Jersey
# Complaint

**144.**     Plaintiff asserts that **Dr. Robert Roth** has committed <u>hundreds of documented acts of defamation</u> against this Plaintiff, by willfully being mendacious in medical reports over two-decades, to satisfy the State of New Jersey's, *Department of Corrections* **penological objectives**. (Plaintiff will expound with ***Civil Trial Testimony***)

**145.**     Plaintiff asserts that *Ann Klein Forensic Center, **Staff Psychiatrist**,* **Dr. <u>Douglas Smith</u>** was exposed in **detailed, defense documents** entered into the court record by this Plaintiff, in the Courtroom of *Presiding Essex County Criminal Court Judge*, Mr. Ronald Wigler.

**146.**     Plaintiff asserts that Dr. Douglas's continued employment at the *Ann Klein Forensic Center* following the Superior Court being informed of his malicious falsification of medical records, is one of the most severe acts of negligence, ever committed by a Presiding Judge, rooted in indifference, and an apparent need to control damage, referred to as 'damage control'.

**147.**     Plaintiff asserts that pressure point torture by the repeat placement of knees down and into the spinal cord area of this plaintiff was sadistically inflicted during virtually all of the brutal, unwanted, brutal injections of OVERDOSES, of brain cell damaging, psychotropic, punitive, chemical-compounds.

**148.**     Plaintiff reserves the right to amend this complaint for further clarity at a later date.

**149.**     Plaintiff reserves the right to add additional individuals to this complaint who are unable to be identified at this time without a complete listing of all names, and addresses (for *Service of Process* purposes), of all employees who are <u>currently employed</u> at the *Ann Klein Forensic Center*.

# United States District Court
# District of New Jersey
# Complaint

150.    Plaintiff reserves the right to add additional individuals to this complaint who are unable to be identified at this time without a complete listing of all names, and addresses (for *Service of Process* purposes), of all employees who were <u>terminated</u> at the *Ann Klein Forensic Center* over the last five (5) years.

151.    Plaintiff reserves the right to obtain copies of all licenses from all of the lawyers and doctors named throughout this historical Civil Action, to properly ascertain if in fact, all are in fact licensed in the prospective fields that they are being paid under, while employed under the color of state law.

152.    Plaintiff reserves the right to review all criminal records related to any and all parties named in this *Historical Civil Action* for credibility reasons, in part.

153.    Plaintiff reserves the right to review all *Department of Motor Vehicles Records* in both the State of New Jersey as well as the State of Pennsylvania, to properly gauge the potential recklessness, indifference, and overall credibility of all parties named herein.

154.    Plaintiff reserves the right to obtain a current of utility bills, copies of rental lease agreements, copies of property deed(s), and a **non-redacted copy** of all parties Voter Registration Forms, to properly whether or not all parties who are named herein, are in fact lawfully receiving legal representation that is afforded only to individuals who are properly employed under the color of state law within the territory of the State of New Jersey.

155.    Plaintiff reserves the right to obtain all government records related to civil service requirements which is a requirement to properly receive representation under the *color of state law*, at the expense of hardworking New Jersey residents.

# United States District Court
# District of New Jersey
# Complaint

**156.**     Plaintiff reserves the right to obtain all Civil Action Complaints filed against any parties named in this Historical Civil Action for a slow, meticulous, analytically review.

**157.**     Plaintiff reserves the right to introduce any and all relevant depositions found in any previous Civil Action, where any party name herein was deposed.

**158.**     Plaintiff reserves the right to obtain any and all Mug Shot Photographs through lawful discovery, for prosecutorial, presentation purposes, as Exhibits, challenging the overall credibility of any and all parties named herein.

**159.**     Plaintiff reserves the right to obtain non-redacted police reports, after the completion of a nationwide data bank search, of all defendants named herein.

**160.**     Plaintiff reserves the right to obtain any and all Police Reports of all doctors and lawyers named herein, that were likely documented by University and collegiate law enforcement authorities at any institution of *Higher Learning,* attended by all doctors and lawyers named herein.

**161.**     Please see attached Affidavit in support of this claim.

**I, Jonathan D. Williams completed this Historical Civil Action *inpropria persona*, on the 8th day of May, in the *Year of our Lord*, two thousand and eighteen.**

_____  5-8-18

**Jonathan Donnell Williams, *Pro Persona***

# 𝔖𝔴𝔬𝔯𝔫 𝔄𝔣𝔣𝔦𝔡𝔞𝔳𝔦𝔱

---

I, Jonathan D. Williams **DO CERTIFY UNDER PENALTY OF PERJURY**, that the following statement in support of this *Civil Action* is the complete truth.

Since I have been detained at the *Mercer County Correctional Center*, I have been subjected to a **purposefully inflicted dietary imbalance on a daily basis.**

Affiant has never received health sustaining orange juice, nor any oranges on food trays, since his illegal detention at the *Mercer County Correctional Center*. Additionally, Affiant has never received any bananas, and as a consequence is now **potassium deficient.**

Please be informed that affiant has never received a Nutritional Supplement for *Vitamin C or Potassium*.

*Affiant* has been forced to ingest a diet, with no alternatives available, that is lacking in the total amount of healthy calories that is needed to maintain a healthy, active, non-sluggish existence.

*Affiant swears* that due to the **Calorie Deficiency** in his daily diet, he has been unable to read legal books for any extended period of time, due to the widely known symptoms of fatigue that is a direct effect of **Maliciously Inflicted Undernutrition**. Undernutrition is not the same as malnutrition; rather it is a deprivation of <u>required and needed calories in a daily diet.</u>

*Affiant* declares that he has been only served one extremely small sugar packet in the morning, and two very little cream cookies on a near daily basis. Affiant declares that one single (1) sugar packet, and two (2) very little cream cookies does not contain the **Three Thousand (3,000) Daily Calories**, that are requires for *Affiant* to maintain a healthy, active, daily existence.

**1 of 2**

Affiant has been criminally denied recreation over the past twelve (12) months. Affiant declares that if he was receiving the medically requires, three thousand calories in his daily diet, that he would have had the strength to maintain a heathy in-cell workout regimen.

Affiant, declare that due to his acute condition of undernutrition, he has had a reduction in muscle mass, that has had a severe impact on affiants ability to ward off any immediate harm to his person. As such, Affiant has endured increased anxiety after enduring numerous acts of violence against his person, while enduring the diminished ability to physically protect himself in accordance with *Criminal Code 2C: 3-4.*

Affiant if seeking an **EMERGENCY COURT INJUCTION**, requiring the *Mercer County Correctional Center*, to supply Affiant with a daily diet that contains the three thousand calories that are required to maintain good health and healthy muscle mass.

Affiant asserts that he is not underweight, however the weight that this affiant has on his body is the most unhealthiest weight imaginable.

Affiant's diet consists of starchy pastas, and stream of bread that has bloated affiant's body.  Affiant is currently litigating two separate *Civil Actions* that are both before the **Honorable Judge Peter G. Sheridan, USDJ.**

Affiant is constantly developing respiratory infections due largely in part to affiant's inability to get the Medical Department to changed affiants diet. A diet that is balanced consists of fresh fruit, vegetables, and a needed increase in calories.

**Dated:  May 8, 2018**

**Sincerely,**

*[signature]*

**Jonathan D. Williams**

**2 of 2**

*Please Pardon any Typographical Errors.*

# United States District Court
# District of New Jersey

# Relief

## *In Addition to Assistance Requested through Complaint.*

**Plaintiff prays:**

*Plaintiff* **is seeking** an EMERGENCY COURT INJUCTION stopping all intentions to involuntarily commit this Plaintiff into the *Ann Klein Forensic Center* for adversarial reasons stated throughout Complaint.

*Plaintiff* **is seeking** a declaratory judgement declaring that defendant's collective actions and deliberate, indifferent, inactions violated **Jonathan D. Williams** *Civil Rights*, under both Federal as well as under the *State Constitution of New Jersey.*

*Plaintiff* **is seeking** an EMERGENCY COURT INJUCTION Ordering all Staff Psychiatrist and Psychologist who are employed *under the color of state law,* at the *Ann Klein Forensic Center*, to immediately furnish the *United States District Court* with a Real Copy of all Certifications, Licenses, and all other medical documents that are required to lawfully practice *Psychology and Psychiatry* in the territory of New Jersey. Plaintiff knows for fact that all who claim to possess a Doctorate Degree at the Ann Klein Forensic Center does not possess such licenses at all.

**1 of 3**

# United States District Court
# District of New Jersey

# Relief

*Plaintiff* is seeking **EMERGENCY COURT INJUCTION** requiring all

employees who are employed under the color of state law at the *Ann Klein*

*Forensic Center* to furnish the *United States District Court* with a copy of their

Property Lease, Property Deed, latest Utility Bill, and Driver's License, so the

*United States District Court* can urgently determine, if in fact the parties named

herein are legal residents of the State of New Jersey, which is a requirement for

the *New Jersey Attorney General's Office* to lawfully represent any party.

Dated: *May 7, 2018*


By: _____
Jonathan D. Williams, *Pro Se*

**2 of 3**

## United States District Court
## District of New Jersey


## **Damages Being Sought**


Punitive Damages of: **$100, 000,000.00**

Declaratory Damages of: **$100,000,000.00**

Compensatory Damages of: **$100,000,000.00**

Consequential Damages of: **$100,000,000.00**

---

Plaintiff is also seeking additional Punitive Damages in an amount that will Sufficiently Punish all Defendants, and serve as a message across the nation and to the International Community, that the many violent crimes and other violations factually alleged herein, will not be tolerated on American Soil, by any governing authority, entrusted to provide care to any *Natural Born U.S. Citizen.*

**3 of 3**

# Exhibit A

# MAG ENTERTAINMENT, LLC v. DIVISION OF ALCOHOLIC BEVERAGE CONTROL

(NOTE: This decision was approved by the court for publication.)

This case can also be found at 375 N.J. Super. 534, 868 A.2d 106.

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0

MAG ENTERTAINMENT, LLC,

Plaintiff/Respondent,

v.

DIVISION OF ALCOHOLIC BEVERAGE
CONTROL,

Defendant/Appellant.

_____

Argued February 1, 2005 - Decided March 7, 2005

Before Judges Skillman, Parrillo and Riva.

On appeal from an Order of the Superior Court
of New Jersey, Law Division, Civil Part, Mercer County, Docket No. L-2766-03.

Eileen Schlindwein Den Bleyker, Deputy Attorney General, argued the cause for appellant (Peter C. Harvey, Attorney General of New Jersey, attorney; Patrick De Almeida, Assistant Attorney General, of counsel; Ms. Schlindwein Den Bleyker, on the brief).

Paul Colwell argued the cause for respondent (Wolff & Samson, attorneys; Mr. Colwell, of counsel; Maria Anastasia and Mr. Colwell, on the brief).

The opinion of the court was delivered by

PARRILLO, J.A.D.

In this interlocutory appeal, we consider whether a request under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, for information for use in collateral administrative proceedings with the governmental entity required to respond to the OPRA request was proper. Specifically, we granted leave to review an order of the Law Division: (1) granting plaintiff, MAG Entertainment, LLC (MAG), the right, under OPRA, to obtain documents from defendant, the Division of Alcoholic Beverage Control (Division or ABC), which were previously denied during discovery in the agency's pending enforcement action against MAG; and (2) compelling the deposition of an agency representative in furtherance of document production. We now reverse.

In October 2001, the Division filed administrative charges seeking to revoke MAG's plenary retail liquor license for allegedly serving alcohol to an intoxicated patron, who was then involved in a fatal car accident, and for alleged acts of "lewdness" by female dancers. In January, 2003, in the enforcement proceeding pending in the Office of Administrative Law (OAL), MAG requested documents and records regarding the Division's handling of other enforcement actions against similarly situated liquor licensees in order to potentially pursue a selective enforcement defense. When the Division refused to disclose this information, MAG filed a motion to compel discovery, which was granted by the administrative law judge (ALJ) in June, 2003. The Division appealed that decision and, in July, 2003, the ABC Director reversed on the ground that the discovery demand was burdensome and would require the agency to "undertake an extensive search of its records."

Rather than seeking interlocutory review here, Rule 2:2-3(a)(2), MAG filed a request under OPRA for "all documents or records evidencing that the ABC sought, obtained or ordered revocation of a liquor license for the charge of selling alcoholic beverages to an intoxicated person in which such person, after leaving the licensed premises, was involved in a fatal auto accident," and "all documents or records evidencing that the ABC sought, obtained or ordered suspension of a liquor license exceeding 45 days for charges of lewd or immoral activity." MAG's request did not identify any specific case by name, date, docket number or any other citation, but instead demanded that:

[T]he documents or records should set forth the persons and/or parties involved, the name and citation of each such case, including unreported cases, the dates of filing, hearing and decision, the tribunals or courts involved, the substance of the allegations made, the docket numbers, the outcome of each matter, the names and addresses of all persons involved, including all witnesses and counsel, and copies of all pleadings, interrogatory answers, case documents, expert reports, transcripts, findings, opinions, orders, case resolutions, published or unpublished case decisions, statutes, rules and regulations.

On October 3, 2003, the Division's records custodian rejected MAG's request, deeming it a "[general] request for information" obtained through research, rather than a "request for a specific record." She further explained that the request was not limited to a particular time frame, thus necessitating a search of both open and closed Division files. More significantly, since the agency's case tracking system did not have a search engine that could readily extract a list of cases that fit MAG's request, the custodian would have to manually review the contents of every Division case file to determine the factual basis for the charges brought, and their disposition. In other words, MAG's request required the custodian to collect, evaluate, and compile information from each file and amounted, in effect, to an improper demand for research.

Consequently, on October 27, 2003, while the enforcement action was still pending in the OAL, MAG appealed the denial of its request to the Law Division by way of order to show cause and verified complaint pursuant to N.J.S.A. 47:1A-6. Prior to the return date, and in connection with its OPRA request, on December 10, 2003, MAG served the Division with a notice to take the oral depositions of both an Assistant Attorney General in charge of the ABC's Enforcement Bureau and a Deputy Attorney General previously assigned to the agency. The deposition notice also demanded the production of all documents related to the matter. Immediately thereafter, the Division filed its answer to the show cause order, denying the allegations and asserting various defenses, most notably lack of jurisdiction and failure to exhaust administrative remedies. On January 2, 2004, the Division also filed a notice of motion for a protective order quashing the depositions, pursuant to Rule 4:10-3.

At the hearing on the return date, January 9, 2004, the Division maintained that MAG's request was untenable due to its scope and the type and amount of work it required, and that, in any event, depositions were not the appropriate means of narrowing the request. MAG argued, to the contrary, that depositions would be an effective way to identify the relevant case files and the pertinent information therein that it was seeking under OPRA. The motion judge did not rule on the matter, but rather ordered the parties to "honestly talk to each other and [s]ee if you [can] define the object of your inquiry, if there's some reasonable ways to do that."

As a result of this directive, the parties undertook settlement discussions. Over the course of

Case 3:23-cv-00850-GC-DEA Document 1-10 Filed 02/10/20 Page 5 of 95 PageID: 27

the negotiations, the Division identified three cases that involved the sale of alcohol to an intoxicated patron who then caused a fatal motor vehicle accident and approximately 296 cases involving lewdness charges. See footnote 1 Nevertheless, despite this effort and the passage of seven months, no settlement was reached because the parties disagreed over which contents were privileged or otherwise exempted from OPRA's reach.

Consequently, another hearing was held on July 30, 2004, at which time the Division objected to blanket production, claiming application of a number of exemptions within OPRA, and citing the fact that the case files contained documents, such as criminal investigatory records, settlement negotiations, legal research, counsel's draft documents, and records of correspondence, that were not subject to disclosure. The Division also maintained that selective disclosure of the charges and depositions of all 300 cases would obviate the purported need for depositions of agency officials since MAG could not properly question either attorney about any other information in the files. MAG argued in response that it was not interested in the mental impression of the deponents, but only in the precise contents of the case files, and that depositions were necessary to identify with more specificity the documents, such as hearing transcripts, OAL decisions, reports and recommendations, and pleadings, that were disclosable. Without an in-camera inspection of documents, and without findings on the Division's claims of privilege and exemptions, the court, by order of August 26, 2004, denied the agency's request for a protective order and allowed the deposition of the Assistant Attorney General in order "to move this thing along." However, the court limited the deposition "to an understanding of what these files are comprised of, with particularity, limited to how they're maintained, what type of disposition is made of materials once the case is over." As for which documents must be made available, the motion judge stated,

". . . it seems to me that the charges and dispositions certainly should be made available. Whether there is more that's made available will be subject to the deposition and the sharpening of the focus that has to come about in this case." In other words, the judge allowed MAG to depose an agency official for the purpose of more clearly refining its OPRA request and obtaining documents for use in a collateral OAL proceeding in which the Division was the adverse party, seeking revocation of MAG's liquor license. We granted a stay of the trial court's order pending disposition of the Division's interlocutory appeal. The administrative enforcement action remains pending in the OAL.

We review de novo the issue of whether access to public records under OPRA and the manner of its effectuation are warranted. We are satisfied that on the basis of this admittedly sparse record, the Law Division's broad disclosure order compelling the deposition of the agency official was clearly erroneous.

As a threshold matter, we first consider the interplay between OPRA and our discovery rules. No one disputes that MAG's OPRA request relates to issues in the ABC's collateral

enforcement action pending in the OAL, and to documents for use in connection with that administrative proceeding. Although the purpose or motive for which information is sought is generally immaterial to the disclosure determination under OPRA, here the manner in which MAG attempted to use OPRA as a vehicle to transfer management of the discovery process in the administrative proceeding from the ALJ to the Law Division was patently improper.

New Jersey provides access to public records in three distinct ways, through the citizen's common law right of access, OPRA, and the discovery procedures applicable to civil disputes. Bergen County Improvement Auth. v. North Jersey Media Group, Inc., 370 N.J. Super. 504, 515 (App. Div.), certif. denied, 182 N.J. 143 (2004). Records that are not available under one approach may be available through another. For example, in Bergen County Improvement Authority, supra, we recognized that the common law definition of "public records" was broader than OPRA's definition of "government records," and therefore, a litigant might be able to obtain documents through the common law that it could not obtain through OPRA. 370 N.J. Super. at 510. Likewise, in Mid-Atlantic Recycling Technologies, Inc. v. City of Vineland, 222 F.R.D. 81, 85 (D.N.J. 2004), the court held that federal discovery rules governing plaintiff's civil lawsuit against municipal defendants did not preclude plaintiff from requesting documents under OPRA even though plaintiff might obtain documents from defendants more quickly through OPRA and otherwise unobtainable under the federal rules.

Unlike the limits and restrictions that a court may impose on the scope of discovery under our court rules, see e.g., Rule 4:10-3; Isetts v. Borough of Roseland, 364 N.J. Super. 247, 262-63 (App. Div. 2003), OPRA embodies the public policy of New Jersey that: government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access accorded by [OPRA] shall be construed in favor of the public's right of access . . . .

[N.J.S.A. 47:1A-1.]

Under OPRA, as under its predecessor statute, the Right to Know Law, N.J.S.A. 47:1A-2 to -4, repealed by L. 2001, c. 404, See footnote 2 the Legislature continued "the State's longstanding public policy favoring ready access to most public records." Serrano v. South Brunswick Tp., 358 N.J. Super. 352, 363 (App. Div. 2003). As we noted in Serrano, in examining case law under the prior Right to Know Law, "New Jersey has a history of commitment to public participation in government and to the corresponding need for an informed citizenry." Ibid. (quoting South Jersey Pub. Co. v. New Jersey Expwy. Auth., 124 N.J. 478, 486-87 (1991)). Thus, N.J.S.A. 47:1A-1 specifically provides that "all government

records shall be subject to public access unless exempt." Furthermore, the custodian of the government record has the burden of proving that the denial of access is authorized by law. N.J.S.A. 47:1A-6.

The fact that litigation was pending between the ABC and MAG when MAG made its public records request does not, in itself, relieve the government agency of its obligation to comply with OPRA. See Mid-Atlantic Recycling Tech., supra, 222 F.R.D. at 85. Documents that are "governmental records" and subject to public access under OPRA are no less subject to public access because the requesting party is opposing the public entity in possession of material sought in collateral litigation. Ibid.; see also County of Los Angeles v. Superior Court, 98 Cal. Rptr. 2d 564 (Cal. Ct. App. 2000) (holding that a plaintiff who had filed suit against a state agency could file a request under California's open records act to obtain documents for use in its civil action even though a request for these same records had been denied in the collateral proceeding). There is no blanket exception carved out to the requirement of disclosure when the public records sought are germane to pending litigation between the requestor and the public entity. Cf. Bolm v. Custodian of Records of Tucson Police Dep't, 969 P.2d 200 (Ariz. Ct. App. 1998) (fact of pending litigation when public records request was made does not affect public agency's obligation to comply with Arizona's public records law). As we previously held in Hartz Mountain, supra, it is appropriate for the Law Division to entertain the OPRA application "even if the denied OPRA request is made in connection with a proceeding pending before a state administrative agency whose final decisions are reviewable in the Appellate Division." 369 N.J. Super. at 182-83. Simply put, the right to inspect and copy governmental records under OPRA is without limitation as to the reasons for which the access is undertaken. A party's right to access public records is not abridged because it may be involved in other litigation with the governmental agency required to respond to the OPRA request.

By parity of reasoning, that the information requested is necessary to properly resolve related civil proceedings pending between the parties is of no moment. OPRA is a public disclosure statute and is not intended to replace or supplement the discovery of private litigants. Its purpose is to inform the public about agency action, not necessarily to benefit private litigants. That is, a party's status as a litigant does not enlarge its access to public records under OPRA. The private needs of the requesting party for information in connection with collateral proceedings play no part in whether the request is proper or whether the disclosure is warranted.

To this end, OPRA's definition of "government record" demarks the outer limits of the statute's reach. Importantly, OPRA limits its definition of "government record" to:

any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has

been made, maintained or kept on file in the course of . . . official business
. . . or that has been received in the course of . . . official business . . .

[N.J.S.A. 47:1A-1.1.]

Moreover, it affirmatively excludes from such definition twenty-one separate categories of information, N.J.S.A. 47:1A-1.1, thereby "significantly reduc[ing] the universe of publicly-accessible information." Bergen County Improvement Auth., supra, 370 N.J. Super. at 516-17.

While OPRA provides an alternative means of access to government documents not otherwise exempted from its reach, it is not intended as a research tool litigants may use to force government officials to identify and siphon useful information. Rather, OPRA simply operates to make identifiable government records "readily accessible for inspection, copying, or examination." N.J.S.A. 47:1A-1. Even then, inspection is subject to reasonable controls, and courts have inherent power to prevent abuse and protect the public officials involved. See DeLia v. Kiernan, 119 N.J. Super. 581, 585 (App. Div.), certif. denied, 62 N.J. 74 (1972). In fact, if a request would substantially disrupt agency operations, the custodian may deny it and attempt to reach a reasonable solution that accommodates the interests of the requestor and the agency. N.J.S.A. 47:1A-5(g).

On this score, the Government Records Council (Council), the administrative body charged with adjudicating OPRA disputes, N.J.S.A. 47:1A-6, has explained that "OPRA does not require record custodians to conduct research among its records for a requestor and correlate data from various government records in the custodian's possession." Reda v. Tp. of West Milford, GRC Complaint No. 2002-58 (January 17, 2003). There, an individual sought information regarding a municipality's liability settlements but did not request any specific record. Ibid. In rejecting the request, the Council noted that OPRA only allows requests for records, not requests for information, and therefore, it is "incumbent on the requestor to perform any correlations and analysis he may desire." Ibid.

Other jurisdictions, in interpreting their own freedom of information laws have reached similar results. For example, in

Capitol Information Ass'n v. Ann Arbor Police, 360 N.W.2d 262, 263 (Mich. Ct. App. 1985), the court upheld the denial of a plaintiff's request for public records that included "all correspondence with all federal law enforcement/investigative agencies . . . that pertain to persons living in Ann Arbor, Michigan . . . ." Even though the request was confined to a relatively short period of time, the court characterized it as "absurdly overbroad" and explained that "[p]laintiff had to request specific identifiable records; it failed to do so here." Id. at 264.

Likewise, in Hangartner v. City of Seattle, 90 P.3d 26, 28 (Wash. 2004), the Washington Supreme Court held improper a request for "all books, records, [and] documents of every

kind" related to a specific public transportation project. Finding the request overbroad, the court reasoned that the state's public disclosure act "was not enacted to facilitate unbridled searches of an agency's property." Id. at 30. Accordingly, a proper request under the act must "identify with reasonable clarity those documents that are desired, and a party cannot satisfy this requirement by simply requesting all of an agency's documents." Ibid. See also State ex rel Dillery v. Icsman, 750 N.E.2d 156 (Ohio 2001) (denying attorney's fees related to plaintiff's public records request because the request was improper due to the fact that it failed to identify the desired records with sufficient clarity).

In Bader v. Bove, 710 N.Y.S.2d 379 (N.Y. App. Div.), leave to appeal denied, 739 N.E.2d 294 (N.Y. 2000), property owners sought access, under New York's freedom of information law, to all records related to the adoption or revision of a village zoning code's prohibition of commercial activity. The Appellate Division affirmed the lower court's denial of the petition as overbroad and burdensome, inasmuch as it would require the village clerk to manually search through every document filed with the village for the past 45 years. Similarly in In Re Gannet County v. James, 447 N.Y.S.2d 781 (N.Y. App. Div.), leave to appeal denied, 435 N.E.2d 1099 (N.Y. 1982), the court denied the petitioner's request for all complaints made to the internal affairs division of the Rochester Police Department alleging harassment or use of force by police officers for the past two years since the Civil Service Commission, which does not maintain separate files for police disciplinary proceedings, would have had to go through every employee's file and compile the information.

Federal courts, considering the permissible scope of requests for government records under the Freedom of Information Act, 5 U.S.C.A 552, have repeatedly held that the requested record must "be reasonably identified as a record not as a general request for data, information and statistics . . . ." Krohn v. Dep't of Justice, 628 F.2d 195, 198 (D.C. Cir. 1980); see also Borom v. Crawford, 651 F.2d 500, 501-02 (7th Cir. 1981); Hudgins v. Internal Revenue Serv., 620 F. Supp. 19, 21 (D.D.C. 1985), aff'd 808 F.2d 137 (D.C. Cir. 1987), appeal dismissed, cert. denied, 484 U.S. 803, 108 S. Ct. 47, 98 L. Ed. 2d 12 (1987). For example, in Krohn, supra, a request for "sentencing statistics" was "fatally flawed" because it was "so broad and general as to require the agency to review the entire record of 'each and every . . . criminal case' in order to determine whether it contain[ed] any evidence of the data, information or statistics that appellant request[ed]." 628 F.2d at 197-98. Extending this reasoning even further, the court in Borom, supra, rejected a requestor's argument that the government could not avoid disclosure of information it possessed merely because its record-keeping systems did not compile and store the information in the precise form in which it was requested. 651 F.2d at 501. There, the requestor sought information regarding the parole or early release of black and white federal prisoners, but the Parole Commission's data systems did not collate information based on race. Ibid. Affirming a grant of summary judgment in favor of the government, the court reiterated the rationale

espoused in Krohn. Id. at 502. But see Ferri v. Bell, 645 F.2d 1213 (3rd Cir. 1981) (holding that request under FOIA could not be rejected in toto simply because compliance would require more work than merely referring to a general index).

We do not interpret OPRA any differently. Under OPRA, agencies are required to disclose only "identifiable" governmental records not otherwise exempt. Wholesale requests for general information to be analyzed, collated and compiled by the responding government entity are not encompassed therein. In short, OPRA does not countenance open-ended searches of an agency's files.

Here, the Law Division judge failed to apply these governing principles and, therefore, erred in granting MAG's OPRA request. Most significantly, the request failed to identify with any specificity or particularity the governmental records sought. MAG provided neither names nor any identifiers other than a broad generic description of a brand or type of case prosecuted by the agency in the past. Such an open-ended demand required the Division's records custodian to manually search through all of the agency's files, analyze, compile and collate the information contained therein, and identify for MAG the cases relative to its selective enforcement defense in the OAL litigation. Further, once the cases were identified, the records custodian would then be required to evaluate, sort out, and determine the documents to be produced and those otherwise exempted. Simply put, the Division was asked to do the very research and investigation MAG needed to do in the administrative proceeding in order to establish a "colorable claim" of selective enforcement before being entitled to pre-trial discovery as to its defense in that forum. State v. Ballard, 331 N.J. Super. 529 (App. Div. 2000); State v. Smith, 306 N.J. Super. 370 (App. Div. 1997); State v. Kennedy, 247 N.J. Super. 21 (App. Div. 1991). Having failed to make any threshold showing in the OAL, MAG employed OPRA as an alternative to civil discovery, to obtain information previously denied in the enforcement action. While OPRA may provide access to governmental records otherwise unavailable, MAG's request was not a proper one for specific documents within OPRA's reach, but rather a broad-based demand for research and analysis, decidedly outside the statutory ambit.

But even if MAG's OPRA request may be viewed as one properly for governmental records, the manner in which the Law Division judge tried to effectuate access was patently erroneous. Obviously recognizing the sheer breadth and scope of MAG's request, the court compelled the deposition of a Division representative in order to better manage, refine, and narrow the search. Of course, the perceived need for such extraneous aid only serves to highlight the impropriety of MAG's request in the first instance. By ordering the deposition of an agency official, the court compounded the error, not only implicating a host of other concerns, see, e.g., Federal Trade Commission v. Grolier, Inc., 462 U.S. 19, 30, 103 S. Ct. 2209, 2216, 76 L. Ed. 2d 387 (1983) (Brennan, J., concurring); Kerr v. Able Sanitary and Environmental Services, Inc., 295 N.J. Super. 147, 158-59 (App. Div. 1996), but also far

exceeding the limited relief and summary procedures afforded under the statute. Without question, proceedings under OPRA are to be conducted in a "summary or expedited manner." N.J.S.A. 47:1A-6; Hartz Mountain, supra, 369 N.J. Super. at 185; Courier News v. Hunterdon County Prosecutor's Office, 358 N.J. Super. 373, 378 (App. Div. 2003). This means that a trial court is to proceed under the procedures prescribed in Rule 4:67. R. 4:67-1(a). The action is commenced by an order to show cause supported by a verified complaint, and at an initial hearing, if the court is "satisfied with the sufficiency of the application, [it] shall order the defendant to show cause why final judgment should not be rendered for the relief sought." Ibid; R. 4:67-2(a). The court must try the case at the return date of the order to show cause "or on such short day as it fixes." R. 4:67-5; Courier News, supra, 358 N.J. Super. at 378.

In a proceeding conducted under Rule 4:67-5, a court must make findings of fact, either by adopting the uncontested facts in the pleadings after concluding that there are no genuine issues of fact in dispute, or by conducting an evidentiary hearing. Id. at 378-79. For instance, in an OPRA action, as here, the court is obliged when a claim of confidentiality or privilege is made by the public custodian of the record, to inspect the challenged document in-camera to determine the viability of the claim. Hartz Mountain, supra, 369 N.J. Super. at 183; see also Loigman v. Kimmelman, 102 N.J. 98 (1986). "That inspection implies the necessity of recorded factfinding by the trial judge as well as the opportunity of the parties to address general principles relative to the claim of confidentiality and privilege, as well, perhaps, an opportunity to the government custodian to argue specifically, as part of the in-camera review, why the document should be deemed privileged or confidential or otherwise exempt from the access obligation." Hartz Mountain, supra, 369 N.J. Super. at 183.

Of course, these procedures must be conducted in an expedited manner. Summary actions are, by definition, short, concise, and immediate, and further, are "designed to accomplish the salutary purpose of swiftly and effectively disposing of matters which lend themselves to summary treatment." Depos v. Depos, 307 N.J. Super. 396, 399 (Ch. Div. 1997) (quoting Perretti v. Ran-Dav's County Kosher, 289 N.J. Super. 618, 623 (App. Div. 1996)). Unlike Rule 4:67-2(b), which allows for conversion of a plenary action into a summary action, and, therefore, may require an elaborated record, Rule 4:67-2(a), which governs OPRA actions, does not permit the record to be supplemented by depositions or other forms of discovery. In other words, Rule 4:67 distinguishes between those actions permitted to proceed in a summary manner by rule or statute, as is the case here, and actions that may be converted from plenary actions into summary actions. See Taylor v. Ford Motor Co., 703 F.2d 738, 742-43 (3rd Cir. 1983). While the latter specifically contemplate depositions, such protracted discovery is simply not suitable, and, absent legitimate need, is not permissible in actions, like OPRA proceedings, that are inherently summary by nature and expedited in manner. See footnote 3

Yet, the unorthodox procedure invoked in this case was neither summary nor expeditious. Quite the contrary, the hearing at which the agency official's deposition was ordered occurred seven months after MAG's OPRA application was filed. By then, although the Division had posed a number of objections to the request, the court had not undertaken an in-camera inspection of any documents or passed on any of the agency's claims of privilege, confidentiality, or exemption. Instead, after the passage of so much time, the court took the preliminary step of ordering the official's deposition. Even though presumably only to index the contents of the 300 case files previously identified by the Division, this extraordinary measure was not only beyond the limited scope of the summary hearing and, therefore, impermissible, but it was also totally unnecessary. The Division's own regulations specify precisely what documents are required to be maintained in its files in the course of official business, N.J.A.C. 13:2-29.1. Thus, no legitimate purpose is served by having an agency official reiterate that which agency rules clearly prescribe. Moreover, even assuming so innocuous a purpose, this "access" device nevertheless runs the risk of infringing on protected areas, generating further judicial involvement, and prolonging this already burdensome and protracted litigation. What is starkly obvious is that OPRA has been employed here to circumvent the discovery process in the collateral administrative proceeding.

We are of the view that there must be closure to this matter, especially since the Division's enforcement action against MAG, filed over two years ago, has been stayed pending resolution of this interlocutory appeal. Because we find that the Division was not required to comply with MAG's invalid OPRA request, we vacate the order of August 25, 2004, compelling the agency official's deposition, and direct the Law Division on remand, to dismiss the matter.

Reversed and remanded.

Footnote: 1 A dispute subsequently arose over the exact meaning of this representation. The Division claims it was able to identify these cases by treating the negotiations as a modified OPRA request, in which MAG limited the scope of records it sought by only asking for cases from 1990 to the present. On the other hand, MAG asserts that it agreed to no such qualification and considers the Division's representation responsive to its original OPRA request. As such, MAG claims the identified cases constitute all the relevant information being sought.

Footnote: 2 In replacing the Right to Know Law with OPRA by L. 2001, c. 404, the Legislature retained much of the original statement of legislative purpose and findings, N.J.S.A. 47:1A-1. See Hartz Mountain Indus., Inc. v. New Jersey Sports & Expo. Auth., 369 N.J. Super. 175, 183, n. 2 (App. Div.), certif. denied, 182 N.J. 147 (2004).

Footnote: 3 To be sure, in certain instances, depositions may be proper in actions brought

Case 3:18-cv-09006-PGS-LDA Document 40 Filed 02/20/20 Page 65 of 95 PageID: 2781

pursuant to Rule 4:67-1(a). Significantly, Rule 4:67-5 allows the court, for good cause shown, to order that an action proceed as in a plenary action. Here, however, MAG never made such a motion, nor did the judge find good cause to convert the action into a plenary proceeding.

# Exhibit _B_

# The right experts make a real difference.



**Forensic psychological evaluations and expert witness testimony in criminal, employment, immigration, negligence and civil rights cases**

STEPHEN REICH, Ph.D., J.D., Director, Psychologist and Lawyer



## FORENSIC PSYCHOLOGY GROUP
141 East 55th Street, Suite 2A, New York, NY 10022
212.935.6133  www.forensicpsychologyexperts.com

# Exhibit C

# Hasson Psychological Group, LLC

## CHARLES S. HASSON, Ph.D., *Licensed Psychologist, NJ, NY*

### COMPREHENSIVE FORENSIC SERVICES:
Assessments, Testing, and Testimony

- Expert Witness in Criminal, Civil and Family Court cases
- Independent Medical Examinations
- Analysis of PTSD, other forms of emotional trauma in tort cases
- Assessment of Workplace Harassment
- Child Custody Evaluations/DYFS cases/second opinions
- Criminal Responsibility/Diminished Capacity/Competence to Stand Trial, Risk (Dangerousness) Assessments
- Domestic Violence/Diminished Capacity Defenses
- Law Enforcement/Fitness for Duty/second opinions
- Guardianship/Assessment of Diminished Capacity in Seniors
- Neuropsychological/Cognitive/Academic Assessments for brain injury, academic accommodations

**111 Charlotte Place, Suite 302, Englewood Cliffs, NJ 07632**
**Phone: 201-568-1111 • Fax: 201-568-0422**
**Email: drhasson1@gmail.com**

RECEIVED

MAR 2 2 2019

AT 8:30_____M
WILLIAM T. WALSH
CLERK

Jonathan D. Williams, *Pro Se*
*Ann Klein Forensic Center*
1609 Stuyvesant Avenue
W. Trenton, New Jersey 08628

**Mr. William T. Walsh**
*U.S. District Court Clerk*
402 E. State Street
Trenton, New Jersey 08628

Re: Completed **Statement of Claims, Section B**.

Dear Court Clerk,                                    March 19, 2019

Enclosed please find page two of **Statement of Claims, Section B**.

I just mailed you off a 1983 Civil Action (Jonathan D. Williams vs. Ann Klein Forensic Center, et al.) where I am suing for $800,000,000.00.

Please attached the enclosed page to the *1983 Civil Action*.

Thank you for your time in this matter.

*Most respectfully,*

Jonathan D. Williams, *Pro Se*

C.      If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

**III.     Statement of Claim:**

State as briefly as possible the facts of your case.  Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.      Where did the events giving rise to your claim(s) occur? *Ann Klein Forensic Center, 1609 Stuyvesant Ave., Trenton, N.J.*

B.      What date and approximate time did the events giving rise to your claim(s) occur? *Between the Dates of 1-20-19 through 3/18/19*

C.      Facts: _____

> [What happened to you?]

*Please see attached.*

> [Who did what?]

*Please see attached.*

> [Was anyone else involved?]

*Please see attached.*

> [Who else saw what happened?]

*Please see attached.*

- 3 -

Jonathan Williams
AKFL
1602 Stuyvesant Ave.
W Trenton NJ 08628

Mr. William T. Walsh
U.S. District Court Clerk
402 E. State St.
Trenton N.J. 08628

Rec'd 2020

RECEIVED

MAR 2 2 2019

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

Jonathan Williams, Pro Se
1609 STuyvesant Ave
W. Trenton, N.J 08628

Mr. William T. Walsh
U.S. District Court Clerk
402 East State Street
Trenton, N.J  08628

Dear Court Clerk,                    3/19/19

Enclosed please find a 1983 Civil
Rights Complaint, where I am
seeking emergency relief.

The matters are  extremely serious,
and I am asking your office,
to rush a copy of all papers
enclosed, to the Chambers of
The Honorable Judge Peter G. Sheridan.

Thank you in advance for your
need promptness Mr. Walsh.

Respectfully submitted,

Jonathan Williams

Pro Se

RECEIVED

MAR 2 2 2019

AT 8:30_____M
WILLIAM T. WALSH
CLERK

# **Declaration of Verification**

I, **Jonathan Donnell Williams** declare that the facts stated in the Complaint and in all

other related filing papers, in the matter of:

*Ann Klein Forensic Center, et al.*                    are true.


I, Jonathan Donnell Williams, understand that if a declarant willfully gives false

information in Civil Action filing papers, that such an act may result in prosecution for

perjury.

Respectfully submitted,

Jonathan D. Williams, *Pro se*

# United States District Court

## District of New Jersey

RECEIVED

MAR 2 2 2019

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

## **Damages Being Sought**

**Punitive** Damages of: $200,000,000.00

**Declaratory** Damages of: $200,000,000.00

**Compensatory** Damages of: $200,000,000.00

**Hedonic** Damages of: $200,000,000.00

**Treble** Damages of: To Be Determined

# United States District Court

# District of New Jersey

---

## Relief Requested

WHEREFORE, Plaintiff requests that this Court grant the following relief:

A. Declare that Defendant CEO, D. Kessler violated Plaintiff's Eighth Amendment rights when he failed to keep Defendant Doctors and Plaintiff seperated, in light of the extremely serious allegations asserted.

B. Declare that the practice of seclusion / solitary confinement of the 'described mentally ill is an Eighth Amendment violation'.

Page No.  1

# United States District Court

# District of New Jersey

---

## Relief Requested

C.  Declare that all psychotropic drugs that cause psychosis and internal organ destruction should never be brutally and forcefully injected into Plaintiff.

D.  Declare that the over-used restraint chair should be removed from further usage like the Punitive Torture Bed was removed.

e.  Plaintiff prays to the Court to grant all damages being sought.

f.  Plaintiff prays to the Court to grant such other relief as it may appear Plaintiff is entitled to.

Page No. 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Jonathan D. Williams,
et al.

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

Ann Klein Forensic Center,
D. Kessler, CEO
Dr. Robert Roth
K. Green (M.S.O.)
L. Hargis (M.S.O.)
M. Cheek (M.S.O.)
Dr. Dariusz Chacinski
Justyna Oberschmidt
Silas Odaa
Dr. Singh
"Dr." Ricardo Grippaldi, et al.

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

## COMPLAINT

Jury Trial: ☒ Yes ☐ No

*(check one)*

**I.     Parties in this complaint:**

A.     List your name, address and telephone number.  Do the same for any additional  plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff      Name                    Jonathan Williams
               Street Address          1604 Stuyvesant Avenue
               County, City            County of Mercer, Trenton
               State & Zip Code        N.J., New Jersey  08625
               Telephone Number        None Available

*All (4) Defendant hold*
*Same exact address.*                              *Defendants*

B.    List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1        Name *Ann Klein Forensic Center*
                       Street Address *1609 Stuyvesant Avenue*
                       County, City *County of Mercer, Trenton*
                       State & Zip Code *New Jersey,   08628*

Defendant No. 2        Name *D. Kessler, CEO*
                       Street Address *1609 Stuyvesant Avenue*
                       County, City *County of Mercer, Trenton*
                       State & Zip Code *New Jersey,   08628*

Defendant No. 3        Name *Dr. Robert Roth*
                       Street Address *1609 Stuyvesant Avenue*
                       County, City *County of Mercer, Trenton*
                       State & Zip Code *New Jersey,   08628*

Defendant No. 4        Name *K. Green*
                       Street Address *1609 Stuyvesant Avenue*
                       County, City *County of Mercer, Trenton*
                       State & Zip Code *New Jersey,   08628*


II.    **Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. There are four types of cases that can be heard in federal court: 1) Federal Question - Under 28 U.S.C. § 1331, a case   involving the United States Constitution or federal laws or treaties is a federal question case; 2) Diversity of Citizenship - Under 28 U.S.C.  §  1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case; 3) U.S. Government Plaintiff; and 4) U.S. Government Defendant.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*
[X] Federal Questions          [ ] Diversity of Citizenship
[ ] U.S. Government Plaintiff   [X] U.S. Government Defendant

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? *Eighth Amendment*

- 2 -

C.      If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

        Plaintiff(s) state(s) of citizenship _____

        Defendant(s) state(s) of citizenship _____

## III.   Statement of Claim:

State as briefly as possible the <u>facts</u> of your case.  Describe how <u>each</u> of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.      Where did the events giving rise to your claim(s) occur? *Ann Klein Forensic Center, 1609 Stuyvesant Ave., Trenton, N.J.*

B.      What date and approximate time did the events giving rise to your claim(s) occur? *Between the Dates of*

C.      Facts:

*Please see attached.*

*Please see attached.*

*Please see attached.*

*Please see attached.*

- 3 -

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _____

_____

_____

_____*Please See Attached*_____

_____

_____

_____

_____

_____

_____

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

_____

_____

_____

_____

_____

_____*Please See Attached*_____

_____

_____

_____

_____

_____

_____

_____

_____

- 4 -

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _19_ day of _March_ , 20 _19_ .


Signature of Plaintiff _Jonathan Williams_
Mailing Address _1609 Stuyvesant Ave._
_W. Trenton, N.J._
_08628_
Telephone Number _None available_
Fax Number *(if you have one)* _None available_
E-mail Address _None available_


<u>Note</u>:   All plaintiffs named in the caption of the complaint must date and sign the complaint.


Signature of Plaintiff: _____

- 5 -

# United States District Court
# District of New Jersey

III. Statement of Claim:

**What happened to you?**

1.  Plaintiff, Jonathan Williams was illegally placed under the so-called 'Care' of Civil Action No. 3:18-cv-09606, Defendant Dr. Robert Roth on March 18, 2019 at Defendant Facility, Ann Klein Forensic Center.

2.  Defendant Dr. Roth walked onto the Unit 5 Housing Area where Plaintiff is being illegally held captive, and loudly stated the following, "He's suing us for four hundred million people!" Moments later Defendant Dr. Roth added, "I don't care what is written, lie on him!"

3.  Plaintiff asserts that Ex-Felon H. Pica fabricated a one-sided so-called "incident report" against Plaintiff, that was used to inflict criminal-lock door-punitive seclusion/solitary confinement against Plaintiff, Jonathan D. Williams, about one (1) week prior to the influential Defendant Dr. Roth's loud statement.

6 OF 15

# United States District Court
# District of New Jersey

## Continuation Page

III. Statement of Claim:

**What happened to you?**

4  Plaintiff asserts that New Recruit Ms. M. Cheek loudly stated, "Fuck that Republican loving house nigga! Ima put an incident report on his black cracka ass too!"

5  Plaintiff asserts that M. Cheek proceeded to admittedly and openly discuss her "Incident Report," that she had fabricated, with Senior Medical Security Officer Mr. K. Green, who was seated outside my cell door, after the large, heavy, steel door, had been locked.

6  Plaintiff asserts that Civil Action No. 3:18-cv-09606, still criminally employed Defendant, Auguice, threaten to kill this plaintiff on several occasions between the dates of 3/1/19 through 3/15/19 - demanding I removed his name as a Defendant.

7 OF 15

# United States District Court
# District of New Jersey

**Continuation Page**

III. Statement of Claim:

**What happened to you?**

7   Plaintiff asserts that he assisted a twenty year old patient name Keyen (last name unknown) with his legal response to an IMAR Proceeding; we both discovered that Dr. Dariusz Chacinski had literally lied on records before the I.M.A.R. Panel stating in-part that Keyen was arrested for CDS and resisting arrest, and entered the above lies as a so-called "rationale" to drug the young man up violently.

8   Plaintiff asserts that Keyen's IMAR Proceedings were so-called "dismissed". (A first in the history of the Ann Klein Forensic Center)

9   Plaintiff asserts that upon questioning so-called "Doctor" Ricardo Grippaldi confessed that he never obtained a real

8 OF 15

# United States District Court
# District of New Jersey

**Continuation Page**

III. Statement of Claim:

**What happened to you?**

"psychology degree" as the records at hundreds of IMRR Proceedings reflect Mr. Grippaldi as having.

10   Plaintiff asserts that so-called "Nurse" Justyna Oberschmidt does not have a nursing degree, to lawfully hold her current position at A.K.F.C. (Ann Klein Forensic Center).

11   Plaintiff asserts that so-called "Nurse" J. Wilkins openly admitted that she did not have a Nursing Degree to hold her current position at Ann Klein Forensic Center (AKFC).

Plaintiff asserts that he made several attempts to speak with the current CEO at AKFC, and he has remained grossly indifferent to my cries for help.

9 OF 15

# United States District Court
# District of New Jersey

### Continuation Page

III. Statement of Claim:

**What happened to you?**

12 Plaintiff asserts that Program Coordinator Mr. Silas Odaa was employed illegally for years under the title of "Nurse" at AKFC.

13 Plaintiff asserts that elderly Dr. Singh was brainwashed by Defendant Dr. Robert Roth, and did proceed to tell me false, slanderous statements that Dr. Singh claim was told to him by illegally employed Dr. Robert Roth who cleverly in-stilled fear and apprehension in the elderly Dr. Singh.

# United States District Court
# District of New Jersey

III. Statement of Claim:

IV. Injuries:

14  Plaintiff, Jonathan Williams suffered painful hematemesis, where plaintiff vomited blood after ingesting acid after plaintiff signed a "Informed Consent Form" while under duress.

15  Plaintiff asserts that he endured extreme, mental and emotional distress after being maliciously and sadistically place in locked door, solitary confinement/seclusion on the extremely punitive and restrictive Unit 2 at the Ann Klein Forensic Center (hospital).

16  Plaintiff asserts that after ingesting Valproic Acid, plaintiff developed a severe case of possibly, chemical induced, gastroenteritis.

17  Plaintiff developed a debilitating fever which is a widely known So-called Side-Effect of organ damaging mind altering chemical drugs.

11 OF 15

# United States District Court
# District of New Jersey

III. Statement of Claim:

IV. Injuries:

18   Plaintiff was treated for his fever by Nurse Justyna Oberschmidt, who gave plaintiff Tylenol for a 104° Temperature.

19   Plaintiff suffered extremely distressing palpitations shortly after ingesting the State Government Prescribed acid, referred to as Depakene.

20   Plaintiff complained of extreme chest pain shortly after ingesting Depakene (Valproic Acid).

21   As plaintiff write, he is experiencing extreme weakness.

22   As plaintiff write, he is experiencing extreme malaise.

23   Plaintiff asserts that he endured significant mental anguish, after he was lied on by ex-Felon H. Pica, who fabricated reports against

12 OF 15

# United States District Court
# District of New Jersey

III. Statement of Claim:

IV. Injuries:

Plaintiff, Jonathan Williams.

24   Plaintiff asserts that the Food
and Drug Administration wrongfully
approved Valproic Acid as well as
Divalproex Sodium for so-called
"mood swings" (Please See Exhibit
A) when some of the listed and
well known so-called 'side-effects'
are:

    (a) Psychosis

    (b) Hostility

    (c) Agitation

    (d) impaired cognition

25   Plaintiff firmly asserts that the,
above described 'side-effects'
are all factors that will exacerbate
any genuine case of Bipolar   or

13 OF 15

# United States District Court
# District of New Jersey

III. Statement of Claim:

IV. Injuries:

any other real and existing mental health disorder.

26  Plaintiff asserts that his existing tardive dyskinesia, as described in Civil Action No. 3:18-cv-09606, in numbered section, seventy seven (77) of the Complaint, will be exacerbated if all plans to continuously, and maliciously - drug up plaintiff is not stopped by an emergency Court Order.

27  Plaintiff is being threatened with violence at the Ann Klein Forensic Center, as a consequence of Plaintiff refusing to except any more psychotropic acid (Depakene / Depakote).

28  Plaintiff reviewed a PDR.net printout of Depakene and learnt that he can be subjected to a psychotropic drug induced "coma".

14 OF 15

# United States District Court
# District of New Jersey

III. Statement of Claim:

IV. Injuries:

29   Plaintiff asserts that he is maliciously being de-stabilized by so-called medication, when the drug itself creates and/or causes severe mental illness.

30   Plaintiff stated in the above-said Complaint, in numbered section fifteen, "Plaintiff asserts that the witness further stated,

"Ann Klein does not want you to win your Civil Action, and they are desperate to demonize you on the records, to stop you from getting any money then bailing out of jail with it.

Plaintiff asserts that the profound truth contained in the above quotation caused significant emotional distress upon plaintiff by false reports, by brand new recruits.

15 OF 15

# United States District Court
# District of New Jersey

III. Statement of Claim:

**Who else saw what happened?**

31    Plaintiff asserts that Close Circut
Video Cameras are mounted
throughout ARFC.

_/_ **OF** _/_

# United States District Court
# District of New Jersey

III. Statement of Claim:

**Was anyone else involved?**

32

Please read 'what happened
to you' and 'Injuries'.

_/_ OF _/_

# United States District Court
# District of New Jersey

III. Statement of Claim:

**Who did what?**

33        Please read 'what happened

to you' and 'Injuries'

/ OF /